Good morning, Your Honor. I'm Jose Robles, and I represent Mr. Ramos-Soto. I guess I'll start with the issue of standing, if it may please the Court. And one of the issues that came up when the case began was that Mr. Ramos-Soto did not have any standing to contest his Fourth Amendment rights. And it's the position of the defense that he did have standing on the basis, for one, that he was driving the car. And it's even that's alleged in the complaint, the criminal complaint at the beginning. And then in the findings of and then I guess this this was a crime that involved an element of possession. And I believe that if it involves an element of possession, I think that he has an interest in contesting any issue that relates to the possessory interest. And for that reason, I think that he did have standing. Well, there's no I mean, that's an appealing argument up to the point when he gets out of the car and runs away. Well, that's what was alleged. And we never we and then when it was addressed, I think what one has to take in mind, that's what was what the officers were or the agent. Agent Casillas was alleging that when they this thing what I tried to write in the briefs and I don't know that this pursuit and arrest happened really, really fast and in less than a mile. And and what happened was they see the car pass by. They see the Mexican plates and they were in a stationary position. And within less than 20 seconds, they're right alongside it, flashing the car for a couple of seconds. Then they go back behind it. And at one point, I think Agent Conceit Casillas mentions that he was trying to get a registration check on the vehicle. And then that's when the car started either slowing down because he's right behind him. And I think what they really did is they tailgate him and tailgate him till it stops. It comes to a stop. And then the defendant, the driver runs in front of the car. And then that agent. Well, one of the agents stops him and arrests him on the other side of the road. And that's what what the lower court had said, that if he hadn't run, he had an issue. And but that's kind of the gist of the whole thing. He didn't run. I'm not saying he didn't run. He got out and, you know, he he did run. But the whole thing is you have to. This happened in the desert, in the dark. You don't know what's happening. And but I mean, that's just what happened. So if he did abandon the vehicle, I mean, I still don't think. Well, I don't think he abandoned. What's his privacy interest in the in the automobile? He didn't own it. He had I think it was the only time he ever saw it. Now, as the district judge said, if he stayed in the car, he has his presence. That gives him some sort of standing. But he took off. Yes. Well, as far as that was the finding of the magistrate and then adopted by the district court. One of the things disputing it. Well, in a way, that's what happened. I mean, you know, what can I say about as far as disputing it? But this is the thing. I mean, it just happened so fast. I'm my position is that it's just a part of the provocation of the Border Patrol, the way this happened and just forcefully stopping. You'd have an argument if he owned the car. It was his car. And he took off. I don't think necessarily he ran off with the problem of his possessory, you know, right of privacy in his own car. But it wasn't his car. It was the only time he ever saw it. His his connection to that car was really tangential. Well, and then the district court, after the bench the bench trial, made a finding that says the fact that defendant was the driver of a vehicle places him in control of the contents and of that vehicle, which was the marijuana. So I think he had at least an interest, a possessory interest to contest. But the issue for criminal law is different than the issue for Fourth Amendment purposes. What's possession? What is possession? Well, I mean, you know, it's a different issue. Yeah. Standing as opposed to criminal possession. But the whole thing. Use the word possession. But they're really two different issues. One's a privacy issue and one is a criminal, you know, an element. Yeah. Well, yeah, I agree with that part. But if that's the part that he had no standing, then that's the end of the case. The district court finds that he abandoned it. Do we review that as a question of fact or conclusion of law or what? Well, the district court found that he abandoned it pursuant to the allegations in the pleadings. And on that part, without receiving any evidence, I think that that was an improper finding. At the suppression hearing, there was a suppression hearing? We were scheduled for a suppression hearing, but the government argued that there was no standing, so that from there, there was no suppression hearing as far as the motion to suppress evidence. How did the judge determine that there was no standing? Just by ruling and adopting the government's argument. Without taking any evidence or anything of that nature to make that determination that he did run and abandoned the car. It's just from the ---- Well, maybe it wasn't suggested. Yes, it doesn't seem to be here. And so, but, you know, that's so there was no, you know, the motion to suppress was never heard as a result. I see. No evidence was taken. So that was the argument of the defense in the appeals and in the motions that it was almost like taking judicial notice of a disputed set of facts. And for that reason, he didn't have the opportunity to address that. So that's, that was the part or that's what kept this, well, that position. And are there any other questions at this point? I think that's it. Okay. You can use your time if you need it. Yes. Thank you. Okay. Thank you. May it please the Court, Celeste Corlett here on behalf of the United States of America. The district court did not clearly err in making a factual determination that the defendant fled from the vehicle, abandoned the vehicle and the marijuana and thus had no standing to contest the seizure of the marijuana. First of all ---- How did he make that factual determination? The defendant had admitted, he made a factual assertion in his motion to suppress that the defendant fled from the vehicle. And he never has withdrawn that or amended that finding. And as he argued today, when he argued before the court at the motion to suppress hearing, was that because he was the occupant of the vehicle, he still had standing to contest the suppression hearing. But as the magistrate and then the district court adopted that, correctly found that the defendant made a factual assertion, the government agreed with that factual assertion, and he was bound by that factual assertion that he fled from the vehicle. Once both parties agreed that he fled from the vehicle, then he has no standing to contest the seizure of the marijuana that he abandoned. He never moved to withdraw that? No, Your Honor. The closest that he came to even addressing the issue of whether or not he abandoned or he fled from the vehicle or not, besides his first statement, and this was in his factual section of his motion to suppress, was in his reply to the government's response to his objections to the magistrate's report and recommendation. And in that reply, he claims that he just wrote what the agent said in his report and that he contested those notations. But then as he goes on to contest those notations, what he's contesting is not that he fled, but that he could see through the window and some other facts. But he never amends the facts or says that he does not agree that he fled. He never said that if there had been a hearing, that the evidence would have been different, that he was prejudiced. In fact, we know that he couldn't say that the defendant did not flee because later, at a later suppression hearing, this was on the motion to suppress statements, the defendant testified under oath and the defendant admitted that he fled. So the district court did not clearly err in making that factual determination. And what about on the motion to suppress the statements, did the government ever explain why it failed to produce the signed waiver of rights? No, Your Honor. We, at the hearing, the agent testified that he did have the, he read from the waiver of rights and he read a sample, one of them, exact. He didn't have the one signed by Ramos Soto. No, that was not admitted into evidence, Your Honor. Why not? Doesn't the government have the burden of proving that? Well, the government had a burden of proving that he did provide his Miranda warnings. And what the issue was. And that he waived his rights. Yes, and then he waived the rights. And that's what the testimony was. The agent testified that he did read the Miranda warnings, that the defendant did waive his rights. And the district court heard, or the magistrate judged, and then the district court adopted later, heard the testimony of both the agent and the defendant. The defendant testified too. The court was able to judge the credibility of both of those. And he specifically found that the agent was credible and that the defendant was not credible when he said that his rights were not read and that he did not waive those rights. And it was not. Wasn't there something on a tape? Yes. In which he admitted or made reference to the fact that he had made the Miranda was somehow involved? Yes. He did admit that he talked about it. The agent talked about the rights to him, that he did understand his rights, that he did. He admitted that at testimony at the hearing. I'm sorry. I should distinguish that. On the tape, the agent says. The tape was of what? The tape was of his confession. The defendant's confession. And that tape was admitted into testimony, or admitted into evidence at the suppression hearing on his statements. The judge was able to review the transcript of that tape. And in that tape, the agent is saying, you remember that I read to you your rights. And the defendant said yes. And what the agent had testified was that he had read him his rights from the piece of paper. He signed the waiver saying he was waiving his rights. All of this is in Spanish. And then he says he wants to talk to them, so he begins the tape recording to tape his confession. And the judge heard all of that testimony from both the agent and the defendant. He had him, both of those witnesses before him, and he found that the defendant was not credible and that the agent was credible. And so he clearly did not err in making those findings. In addition, even without the statements, it would be harmless error because the district court had the bench trial before the district court. He heard all of the testimony, and he made specific factual findings. And in those factual findings, these are at SCR 37, the district court says even without the statements, he would have found him guilty. So even if by chance this court believes that those statements should have been admitted, the district court specifically found after the bench trial that even without the defendant's statements, he would have found him guilty of the offenses as charged. But wouldn't you agree that the best evidence instead of, you know, instead of having he said, she said, and basing a decision on credibility determinations between the police and a criminal defendant, wouldn't it be better to have the signed statement in Spanish advising him of his rights?  I don't necessarily think it's the best evidence. There's been many times when individuals have said, no, they didn't sign that, even though you have the piece of paper in front of them. At least you have a contemporaneous signature with the advice of the rights. And then you know whether, in fact, for sure they were given in Spanish or English. Well, as I said, the agent did testify to that, and the court did find him to be credible on those, on his testimony. Your Honor, and if I could just go back to the factual determination that the defendant had no standing regarding the marijuana. Again, the district court did have a trial. We did have a trial before the district court. He did make factual findings. And in his factual findings, he. I'm not pressing it. He seems to concede it, so. Okay, fine. Don't try to grasp the feeling. I know. Maybe the claim's not so good. Going back there. As to the forfeitures, Your Honor, this all comes back again to the defendants wanting to bring the vehicle to support his claim that there was no reasonable suspicion. And as we've already discussed, because the defendant had fled the reasonable suspicion issue, he had no standing to contest that. And the government would rely on its briefs for all the additional arguments that we have already made in our briefs, unless the court has questions for the government. Thank you, Your Honor. Do you have something better? Your Honor, as far as the I-214 form, in the transcript, in the excerpt of Record 2, Volume 2, on page 43, the agent testified he didn't ask the defendant whether he read him his rights. He just asked him, do you understand your rights? And the agent testified, well, I told him if he knew what his rights were. Then he goes right back to him and says, no, do you understand your rights? And then he went, and this is on the tape, it just went into, he started interrogating the defendant. So it was disputed that he wasn't read his rights. And then this suppression of statements hearing happened on February 22nd of 2007, and they did not produce the I-214 form. And then we had the bench trial a couple of months later, and we went through the same questioning, and they still didn't have the I-214 form. But at that point, I think an additional fact that the agent stated was that he was 100 percent sure he did it, but that he gave it to legal and never explained what legal was, and there was never any production of this I-214 form. And that was one of the factors in, you know, the argument that his statements were involuntary. And so for that reason, that was the point the government was making, that the judge specifically made findings since it was a judge trial, that even if I disregarded his statements just on the basis of the evidence of the marijuana in the car and him running from it, I would have found him guilty. Well, you know, that's what you got. Those are the facts there. And, I mean, I just did what I could with what I had. And that was one of the things. I'm not criticizing you. I mean, you know, the case has a bunch of issues, but, you know, it all comes down to, you know, the first one was the standing and then the lost car and the lost this. But that's what I have. I didn't mean to criticize you. No. It's okay. Sometimes that happens, right? Yes. Do the best you can. Thank you, counsel. Thank you.
judges: Canby, Wardlaw, Trager